394 S.E.2d 751

**John T. COPLEY**

v.

**NCR CORPORATION, Maria McCarthy, Donald W. Hodgson and Victor Cononi, G.I. Williamson, George J. Carpini, C.J. Steinmetz, Paul W. Lappetito, Manuel Garcia, Elton White, W.F. Buster, D.J. Herman and C.E. Exley, Jr.**

No. 19204.

Supreme Court of Appeals of West Virginia.

June 12, 1990.

---

James W. St. Clair, St. Clair & Levine, Huntington, W.Va., for John T. Copley.

William C. Beatty, Janice P. Epperly, Huddleston, Bolen, Beatty, Porter, and Copen, Huntington, W.Va., Shelley Reed, NCR Corp., Dayton, Ohio, for NCR and the twelve individually named defendants.

MILLER, Justice:

This appeal arises from a May 12, 1989 order of the Circuit Court of Cabell County, which stayed further proceedings in a civil action brought by John T. Copley against his former employer, NCR Corporation (NCR), and ordered the dispute submitted to arbitration. Mr. Copley contends that the lower court erred in ruling that arbitration was required by 9 U.S.C. § 1, *et seq.,* known as the United States Arbitration Act (USAA).[1] We agree, and we reverse the judgment of the circuit court.

On December 21, 1981, Mr. Copley became employed by NCR as a sales representative. His form employment contract contained an arbitration clause which provided that any dispute "arising out of or relating to this contract, or the breach thereof, shall be settle [*sic*] by arbitration in accordance with the rules of the American Arbitration Association[.]"[2]

Mr. Copley worked for NCR until 1987 selling computer hardware and software. In May of that year, he filed a complaint against NCR with the West Virginia Human Rights Commission (HRC), alleging that he had been the victim of age and sex discrimination. Mr. Copley was fired on October 9, 1987, and subsequently filed a reprisal complaint with the HRC. The HRC later determined that probable cause existed to find that NCR had engaged in unlawful discriminatory practices. On June 3, 1988, the HRC issued a notice of right to sue pursuant to W.Va.Code, 5–11–13(b) (1983).[3]

---

1. Many courts refer to the statute as the Federal Arbitration Act and use the acronym "FAA." We prefer the acronym "USAA" so as not to confuse the Arbitration Act with the Federal Aviation Administration.

2. The complete text of the arbitration clause is:
   "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settle [*sic*] by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."

3. W.Va.Code, 5–11–13(b), states, in pertinent part:
   "Notwithstanding the provisions of subsection (a) of this section, a complainant may institute an action against a respondent in the county wherein the respondent resides or transacts business at any time within ninety days after the complainant is given notice of a right to sue pursuant to this subsection (b) or, if the statute of limitations on the claim has not expired at the end of such ninety-day period, then at any time during which such statute of limitations has not expired. If a suit is filed under this section the proceedings pending before the commission shall be deemed concluded.
   "The commission shall give a complainant who has filed a complaint a notice of a right to sue forthwith upon (1) the dismissal of the complaint within one hundred eighty days of the filing thereof for any reason other than a decision on the merits of the case, or (2) the expiration of a period of one hundred eighty days during which period no public hearing has been held on such complaint and the commission and the respondent have not entered into a conciliation agreement to which the complainant is a party: Provided, That the commission shall also give the complainant notice of a right to sue in any case in which, after the expiration of one year, the complaint has not been determined on its merits or a conciliation agreement entered into to which the complainant is a party."
   In *Perilli v. Board of Education,* 182 W.Va. 261, 387 S.E.2d 315 (1989), our most recent case outlining the use of a civil action to redress human rights violations, we confirmed our prior holding in *Price v. Boone County Ambulance*

On August 24, 1988, Mr. Copley instituted a civil action in the Circuit Court of Cabell County, charging NCR with breach of his employment contract, unlawful discriminatory practices, and retaliatory discharge. In response, NCR filed a motion to compel arbitration pursuant to the terms of the employment contract. By order dated May 12, 1989, the circuit court granted NCR's motion and stayed further proceedings in the civil suit until the completion of arbitration. It is from this order that Mr. Copley appeals.

## I.

■ In reaching its decision, the circuit court relied on Section 2 of the USAA, which makes mandatory and enforceable written arbitration provisions "in any maritime transaction or a contract evidencing a transaction involving commerce[.]"[4] Section 1 of the Act defines the terms "maritime transactions" and "commerce" and specifies that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[5]

The parties do not dispute that NCR's business, particularly Mr. Copley's sales of computer merchandise, constituted "a transaction involving commerce" within the meaning of Section 2.[6] At issue instead is whether the "contracts of employment" exception contained in Section 1 removes this controversy from the mandatory arbitration provisions of the USAA.

Despite the broad application of the USAA by the United States Supreme Court,[7] the parties do not cite, nor have we found, any decision in which the Court explains the meaning of the contracts of employment exception.[8]

*Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985), that a right to sue letter is not necessarily a prerequisite to the commencement of such civil suit.

4. 9 U.S.C. § 2 (1947) provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

5. The full text of 9 U.S.C. § 1 (1947) is:

" 'Maritime transactions', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

6. According to the parties, NCR is a Maryland corporation which manufactures and markets products throughout the United States and internationally. Mr. Copley was based in Charleston, West Virginia, but his sales territory covered parts of West Virginia, Ohio, and Kentucky, and he was required to travel regularly among these states in the performance of his job. Products sold by Mr. Copley were manufactured in Japan, New York, and Ohio, and shipped to a distribution center in Ohio. When Mr. Copley placed an order, these products were shipped to Huntington, West Virginia, for distribution to his customers.

7. *See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (predispute agreement to arbitrate claims under Securities Act of 1933 enforceable under USAA); *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (California statute limiting force of arbitration agreements preempted by USAA); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under Securities Exchange Act and Racketeer Influenced and Corrupt Organizations Act subject to arbitration under USAA). An expansive reading of the USAA would relieve the federal courts of the obligation of going to trial in any case involving an arbitration clause in a contract involving a maritime transaction or interstate commerce.

8. In note 9 of *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 40, 108 S.Ct. 364, 372, 98 L.Ed.2d 286, 300 (1987), the Supreme Court made this observation:

The most thorough and scholarly analysis of this provision is contained in *American Postal Workers Union, AFL–CIO v. United States Postal Services*, 823 F.2d 466 (11th Cir.1987), in which the issue was whether the USAA applied to an arbitration clause in a general collective bargaining agreement. The employer, arguing that the Act applied, asserted that

"the collective bargaining agreement in these cases is a 'contract evidencing a transaction involving commerce' within the meaning of section two of the Act, but not a 'contract[ ] of employment of ... any ... class of workers engaged in foreign or interstate commerce,' and is thus not excluded from the operation of the Act by section one." 823 F.2d at 469–70. (Footnotes omitted).

In *American Postal Workers Union, supra*, the court traced the USAA from its inception in 1925 and observed that the contract of employment exemption came about at the behest of "[o]rganized labor, which was already aggrieved by actions of the federal judiciary, [and] did not want federal courts to have the power to order it to arbitrate disputes with management." 823 F.2d at 470. Thereafter, the court noted, Congress enacted a number of statutes beneficial to labor, including the Norris–LaGuardia Act in 1932 and the National Labor Relations Act in 1936. However, in 1947, with the passage of the Taft–Hartley Act, which curtailed some of the rights given to workers under these earlier federal statutes,[9] a question arose as to whether federal courts had authority to order the parties to a collective bargaining agreement to arbitration. The court in *American Postal Workers Union* observed: "Some courts held that they had such power under the USAA, notwithstanding the

Norris–LaGuardia Act or the statutory exclusion in the USAA, which appears to say otherwise.... Other courts held that the statutory exclusion barred the assertion of such power." 823 F.2d at 471. (Citations omitted).

The debate was resolved ten years later by the decisions in *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and its companion case of *General Electric Co. v. Local 205, United Electric Radio and Machine Workers of America*, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957). The Supreme Court determined that the Taft–Hartley Act provided federal courts with jurisdiction to enforce arbitration provisions in a collective bargaining agreement and declined to recognize an independent basis for compelling such arbitration under the USAA.

Finally, the court in *American Postal Workers Union, supra*, analyzed the decisions in other circuits. Although some federal courts had previously held that Section 1 of the USAA did not exempt arbitration clauses in collective bargaining agreements from the Act's mandatory enforcement provisions,[10] the Eleventh Circuit concluded:

"[T]he position that collective bargaining agreements are not 'contracts of employment' within the meaning of the exclusionary language of the USAA was a distinctly minority view even prior to *Lincoln Mills*, and it cannot be cited with any confidence as the current view of *any* of the federal courts of appeals.... Because of this, and because the legislative history behind the provision suggests a contrary reading, we also decline to adopt that position. Accordingly, we hold that collective bargaining agreement are 'contracts of employment'

"The Arbitration Act does not apply to 'contracts of employment of ... workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws. *Textile Workers v. Lincoln Mills*, 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]

(1957) construing 29 U.S.C. § 185." (Citations omitted).

9. *See* R. Gorman, *Labor Law* pp. 5–6 (1976).

10. *E.g., Chattanooga Mailers Union, Local No. 92 v. Chattanooga News–Free Press Co.*, 524 F.2d 1305 (6th Cir.1975); *Hoover Motor Express Co. v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers, Local Union No. 327*, 217 F.2d 49 (6th Cir.1954); *Pietro Scalzitti Co. v. International Union of Operating Eng., Local No. 150*, 351 F.2d 576 (7th Cir.1965).

within the meaning of the exclusion." 823 F.2d at 473.

Other federal courts of appeals have agreed with this reasoning. *E.g., Bacashihua v. United States Postal Serv.,* 859 F.2d 402 (6th Cir.1988); *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.,* 889 F.2d 940 (10th Cir.1989).

■ Clearly, then, the USAA provides for mandatory enforcement of arbitration clauses in contracts involving a maritime or interstate transaction. Under Section 1 of the Act, an exemption is provided for employment contracts of workers engaged in interstate or foreign commerce. Mr. Copley's employment contract falls within the exemption of Section 1. Accordingly, the circuit court had no authority under the USAA to compel enforcement of the arbitration clause in Mr. Copley's employment contract.

## II.

■ Having determined that the court erred in holding that the USAA compelled enforcement of the arbitration clause, we address several subsidiary questions arising under state law.

First, NCR asserts that there exists a state right to compel arbitration under *Board of Education v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977), where we expressed a strong preference for enforcing an arbitration clause. As we stated in Syllabus Point 2 of *Local Division No. 812 v. Central West Virginia Transit Authority,* 179 W.Va. 31, 365 S.E.2d 76 (1987):

" 'Where parties to a contract agree to arbitrate ... all disputes ... arising under the contract, and where the parties bargained for the arbitration provision, such provision is binding and specifically enforceable, ...' Syl. pt. 1, in part,

*Board of Education v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977)."

We briefly summarized our rule in *Barber v. Union Carbide Corp.,* 172 W.Va. 199, 203; 304 S.E.2d 353, 357 (1983):

"[W]e have chosen to limit the availability of arbitration to knowledgeable commercial parties. *Board of Education v. Miller, supra.* Furthermore, we are willing to inquire into such matters as whether the agreement to arbitrate was a contract of adhesion and whether arbitration is proper under the totality of the commercial circumstances."

In this case, we doubt that the parties were "knowledgeable commercial parties." Moreover, the form nature of the contract, containing no individualized terms relating to Mr. Copley's employment, bespeaks a contract of adhesion.

It is not necessary, however, to resolve this issue. The more critical question is whether an agreement to arbitrate contained in an employment contract can usurp certain statutory rights given to an individual. In this case, the issue is whether the right to sue civilly for a human rights violation under W.Va.Code, 5–11–13(b), can be extinguished by an arbitration clause in an employment contract.

We spoke to a similar issue in *Davis v. Kitt Energy Corp.,* 179 W.Va. 37, 365 S.E.2d 82 (1987). In *Davis,* the plaintiff, a coal miner, raised a claim of retaliatory discrimination under W.Va.Code, 22A–1A–20,[11] alleging that he had been removed from the mine safety committee for reporting safety violations. The employer asserted that the plaintiff was precluded from pursuing the discrimination remedy by the arbitration provisions of his collective bargaining agreement.

In Syllabus Point 4 of *Davis,* we stated:

11. W.Va.Code, 22A–1A–20, provides, in pertinent part:

"(a) No person shall discharge or in any other way discriminate against or cause to be discharged or discriminated against any miner or any authorized representative of miners by reason of the fact that he believes or knows that such miner or representative (1) has notified the commissioner, his authorized representative, or an operator, directly or indirectly, of any alleged violation or danger,

(2) has filed, instituted or caused to be filed or instituted any proceeding under this law, (3) has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this law. No miner or representative shall be discharged or in any other way discriminated against or caused to be discriminated against because a miner or representative has done (1), (2) or (3) above."

"A miner against whom an arbitration decision has been rendered under a collective bargaining agreement involving a safety claim is not foreclosed from pursuing a discrimination remedy under W.Va.Code, 22A–1A–20."

In reaching this conclusion, we placed great reliance on *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), in which the United States Supreme Court held that an adverse decision under a collective bargaining arbitration procedure would not foreclose an employee from pursuing a discrimination claim under Title VII of the Civil Rights Act of 1964. The Supreme Court explained why the arbitration clause could not supercede or waive these important statutory rights:

"Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." 415 U.S. at 51–52, 94 S.Ct. at 1021, 39 L.Ed.2d at 160.

For much the same reasons, we held in *Liller v. West Virginia Human Rights Commission*, 180 W.Va. 433, 376 S.E.2d 639 (1988), that the filing of a civil service claim does not foreclose an individual from subsequently pursuing a human rights claim.[12]

A majority of the federal courts of appeals have concluded that even where an employee is subject to the USAA, the contractual obligation to submit to arbitration cannot override or defeat a civil rights claim. *E.g., Utley v. Goldman Sachs & Co.*, 883 F.2d 184 (1st Cir.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 836 (1990); *Nicholson v. CPC Int'l, Inc.*, 877 F.2d 221 (3d Cir.1989); *Swenson v. Management Recruiters Int'l, Inc.*, 858 F.2d 1304 (8th Cir.1988), *cert. denied*, 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989); *Criswell v. Western Airlines, Inc.*, 709 F.2d 544 (9th Cir.1983), *aff'd on other grounds*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544 (10th Cir.1988). *Contra Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195 (4th Cir.1990). In view of this authority, we must conclude that under West Virginia law, an arbitration clause in an employment contract cannot defeat a human rights action filed by the claimant pursuant to W.Va.Code, 5–11–13(b).

### III.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Cabell County and remand the case for further proceedings consistent with this opinion.[13]

Reversed and remanded.

---

**12.** Syllabus Points 4 and 5 of *Liller* state:

"4. The legislature did not intend that the exclusivity provisions of W.Va.Code, 5–11–13(a) (1981), would automatically preclude an employee who files a civil service claim from subsequently filing a complaint with the Human Rights Commission alleging a violation of the West Virginia Human Rights Act.

"5. Where the issue of sex discrimination has not been decided by a deputy sheriff civil service commission, the involved deputy is not foreclosed from filing a complaint with the human rights commission."

**13.** NCR also argues that the May 12, 1989 order requiring arbitration was not a "final judg-

In this original proceeding in mandamus, the relator, Bernice B. Weinstein, seeks to compel the West Virginia Board of Law Examiners (Board) to admit her to practice in this state pursuant to our reciprocity rule, Rule 4.0(b) of the West Virginia Rules for Admission to the Practice of Law. This ment" within the meaning of W.Va.Code, 58–5–1 (1925), and, therefore, was not appealable. We discussed this issue at some length in *Mitchem v. Melton,* 167 W.Va. 21, 277 S.E.2d 895 (1981), where, after reviewing a number of our earlier cases, we concluded that an order denying class standing under Rule 23 of the West Virginia Rules of Civil Procedure was appealable. We recognized that such an order could have "grave procedural consequences to the parties who are denied class participation as if a final judgment has been rendered against them on the merits." 167 W.Va. at 31, 277 S.E.2d at 901. The same grave consequences arise from the inability to litigate a human rights action. Consequently, we find no merit in NCR's procedural argument.