**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AMERICAN GENERAL LIFE AND
ACCIDENT INSURANCE COMPANY,
                    *Plaintiff-Appellee,*

               v.                                        No. 04-2252

LARRY WOOD,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-01-673-2)

Argued: September 19, 2005

Decided: November 14, 2005

Before TRAXLER, KING, and GREGORY, Circuit Judges.

---

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge Traxler and Judge King joined.

---

**COUNSEL**

Leman Walton Auvil, PYLES & AUVIL, Parkersburg, West Virginia,
for Appellant. Vanessa M. Griffith, VINSON & ELKINS, Dallas,
Texas, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

Larry P. Wood commenced a lawsuit in West Virginia state court against his employer, American General Life and Accident Insurance Company ("AGLA"), and his supervisor, Tim Starkey, asserting state-law claims of sex discrimination and wage law violations. In response, AGLA preemptively filed an action against Wood in federal district court in the Southern District of West Virginia, seeking to compel arbitration of those claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and to enter a prohibition against Wood from prosecuting the state action against AGLA. The district court granted that relief and entered judgment against Wood. Because we find that Wood's claims are arbitrable under a valid and enforceable arbitration agreement and that Starkey is not a necessary party to this litigation, we affirm the district court's judgment.

I.

Wood began his employment with AGLA on July 21, 1997, and continued working until his termination on May 5, 2000. On April 1, 1998, AGLA implemented an Employee Dispute Resolution Program ("Program" or "Plan") designed to resolve all employment-related conflicts between employees and AGLA through a four-option process. Prior to the implementation of the Program, Wood and thirty other employees attended a presentation conducted by AGLA General Manager, Nick Coris, on March 20, 1998. According to Wood, Coris represented that the Program "would not in any way prevent an employee of AGLA from suing the company and that the program did not take any rights away from the employees but only added another avenue through which the employee could pursue any dispute with the company." J.A. 57.[1]

AGLA distributed an informational packet regarding the Program to each employee. The cover letter stated:

---

[1]Citations to "J.A." refer to the contents of the Joint Appendix filed by the parties in this proceeding.

> It is important for you to know that employees will not be waiving any substantive legal rights under this new Program. Rather, the Program provides that any substantive legal issues you may have will be resolved in mediation or before a neutral arbiter, whose decision will be final and binding on you and the company. This does mean, however, that under the Program you waive any procedural rights you have to bring a court action and to a jury trial concerning any employment dispute you may have with the Company, including claims of discrimination based on race, national origin, gender, religion, age, or disability under any federal or state civil rights statute.

J.A. 21. The letter further stated that AGLA "may amend the terms of or discontinue the Program at its discretion. However, any such change would affect only future disputes and not any matter pending at the time under the Program." *Id.* The packet detailed the four options—Open Door Policy, Employee Relations Conference, Mediation, and Arbitration—available to employees for dispute resolution.[2] The packet also provided that "[e]mployment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment." J.A. 25.

Specifically with respect to arbitration, the packet set forth, inter alia, the procedures for scheduling conferences, taking discovery, and administering oaths. Under the Program, the employee must pay a $50 processing fee to initiate the arbitration process. After payment, the American Arbitration Association ("AAA") is then required to designate a list of appropriate arbitrators, such that each party can express its order of preference or strike any names. The authority of the arbitrator is limited "to the resolution of legal disputes between the parties." J.A. 54. Specifically, the arbitrator "shall be bound by and shall apply applicable law including that related to the allocation of the burden of proof as well as substantive law. The arbitrator shall

---

[2]Generally, the Program recommended "resolving any issue at the lowest possible level in the organization and proceeding through the other options as necessary." J.A. 29. Some options could be skipped in certain situations. *Id.*

not have the authority either to abridge or enlarge substantive rights available under existing law." *Id.*

The packet also included an "EMPLOYEE ACKNOWLEDGE-MENT AND AGREEMENT CONCERNING AMERICAN GEN-ERAL LIFE AND ACCIDENT INSURANCE COMPANY'S EMPLOYEE DISPUTE RESOLUTION PROGRAM" ("Agreement"). The Agreement stated:

> By my signature below, I acknowledge and understand that I am required to adhere to the Employee Dispute Resolution Plan and its requirement for submission of employment disputes to mediation and/or binding arbitration. I further understand that my employment or continued employment with the Company constitutes my acceptance of the terms of this provision as a condition of my employment or continued employment.

J.A. 56. While Wood and other employees were handed these packets at the meeting, he attests that they were "not given an opportunity to read" the packet. J.A. 58. Moreover, he asserts that the employees "were instructed that we had to sign the forms, that we had no option but to sign them, and were given no time to read the materials before signing the same. We were simply given the materials and told to sign." J.A. 58, 61, 63. Wood claims that he was not told then, nor at any other time, that "by signing that I had received the Dispute Resolution Program that I would be giving up my right to sue under the law for any discrimination against me and, in fact, I was told the opposite." J.A. 57-58. Accordingly, Wood executed the Agreement at the meeting on March 20, 1998.

Following his termination on May 5, 2000, Wood commenced a lawsuit in the Circuit Court of Kanawha County, West Virginia, against AGLA and Starkey, asserting state-law claims pursuant to the Human Rights Act, W. Va. Code § 5-11-1 et seq., and the Wage Payment and Collection Act, W. Va. Code § 21-5-1 et seq. On July 27, 2001, AGLA responded by filing suit against Wood in the Southern District of West Virginia, seeking to compel arbitration of his state-law claims. On December 11, 2002, AGLA filed a petition in the federal action to compel arbitration and to prohibit the underlying state

proceedings. On September 3, 2004, the district court granted the petition, directing that judgment be entered in favor of AGLA and a prohibition be entered against Wood from prosecuting the state action against AGLA.[3] Wood now appeals.

## II.

Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party can compel arbitration if he establishes: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins*, 303 F.3d at 500 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001) (citing cases). Moreover, the FAA was intended to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Accordingly, we "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Hill v. PeopleSoft USA, Inc.*,

---

[3]Although the primary focus of Wood's appeal is the enforceability of the Agreement, he also appears to argue that the district court should not have enjoined him from pursuing his claims against Starkey in state court. To the extent that Wood makes such an argument, however, he misreads the district court's orders. The district court did not enjoin Wood from pursuing his state court claims against Starkey, who is not a party to this federal action. *See* J.A. 80 (speaking in terms of Wood's claims "against plaintiff"—i.e., AGLA).

412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. *Hill*, 412 F.3d at 543 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). Specifically, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (internal quotations and citations omitted). For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citing cases). Since this appeal focuses squarely on the enforceability of the Agreement, we review the district court's application of West Virginia contract principles de novo. *Adkins*, 303 F.3d at 501.

III.

The district court concluded that while the Agreement was an adhesion contract, in that AGLA forced its employees to accept the Program or else face termination, the employees' relinquishment of their state-created constitutional rights to state judicial forums and trial by jury did not render the Agreement unenforceable under West Virginia law. We agree with the district court's conclusion.

Under West Virginia law, adhesion contracts are "form contracts submitted by one party on the basis of this or nothing." *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (W. Va. 2002) (internal quotations and citations omitted); *State ex rel. Saylor v. Wilkes*, 613 S.E.2d 914, 921 (W. Va. 2005) (stating that an adhesion contract is a "'[s]tandardized contract form offered . . . on essentially [a] "take it or leave it" basis . . . [leaving the] weaker party . . . no realistic choice as to its terms'") (quoting *Black's Law Dictionary* 50 (6th ed. West 1990)). However, "[s]ince the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely

unworkable." *Dunlap*, 567 S.E.2d at 273 (internal citations omitted); *Adkins*, 303 F.3d at 501 (remarking that a ruling of unconscionability based solely on the gross bargaining disparities between the parties "could potentially apply to every contract of employment in our contemporary economy"). Rather than adopting a per se rule, West Virginia courts aim at "distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." *Dunlap*, 567 S.E.2d at 273 (internal citations omitted).

In making this distinction, West Virginia cases instruct us to determine whether "'gross inadequacy in bargaining power'" and "'terms unreasonably favorable to the stronger party'" exist, so as to make the contract unconscionable and therefore unenforceable. *Saylor*, 613 S.E.2d at 922 (quoting *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986)). The weaker party cannot simply rely on inequities inherent in the bargaining process, but must identify the existence of unfair terms in the contract. *Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854, 860-61 (W. Va. 1998); *Troy Mining*, 346 S.E.2d at 753 ("A litigant who complains that he was forced to enter into a fair agreement will find no relief on grounds of unconscionability.").

Specifically with respect to enforceability challenges to written arbitration clauses, the Supreme Court of Appeals of West Virginia has stated:

> [I]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

*Saylor*, 613 S.E.2d at 922 (internal citations omitted). Moreover, the court has recognized that "states may not single out arbitration for dis-

favor or special scrutiny simply because arbitration is a 'different forum' than the traditional public court system." *Dunlap*, 567 S.E.2d at 277 (internal citations omitted).

In *Dunlap*, the plaintiff filed a consumer protection suit in West Virginia state court against a jewelry store chain, alleging that the store engaged in a fraudulent scheme to charge customers surreptitiously for credit life, credit disability and property insurance. *Id.* at 269. The plaintiff asserted that he had been forced to sign a purchasing and financing agreement, which included an arbitration provision. *Id.* at 270. Based on this arbitration provision, the court entered an order staying all court proceedings. *Id.* at 271.

Upon review, the Supreme Court of Appeals of West Virginia first noted that state consumer protection laws sought to eradicate unconscionability in consumer transactions. *Id.* at 272. The court further declared:

> [E]xculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable.

*Id.* at 275-76. The court thus held that the arbitration provision was unconscionable, noting that the plaintiff "signed a contract of adhesion containing provisions that would bar him from utilizing two remedies—punitive damages and class action relief—that are essential to the enforcement and effective vindication of the public purposes and protections" underlying consumer protection laws. *Id.* at 279. Accordingly, the court concluded that the "prohibitions on punitive damages and class action relief" arising from the purchase and financing agreement were unconscionable. *Id.* at 280.

Similarly, in *Saylor*, the Supreme Court of Appeals of West Virginia invalidated an arbitration agreement which an applicant was induced to sign as a prerequisite for consideration for employment

with a steakhouse restaurant chain. *Saylor*, 613 S.E.2d at 922. The court found that the arbitration agreement was unconscionable based on several factors: (1) the bargaining power between the employer and applicant, who had a tenth grade education, was grossly unequal; (2) the terms of the agreement were non-negotiable and "clearly" weighed in favor of the employer; (3) the employer retained the unilateral right to modify rules governing arbitration without input or notice to the employee at any time; and (4) the applicant was likely unaware that she was signing the arbitration agreement with a third party arbitration services company, and not with the employer itself. *Id.* According to the court, these circumstances demonstrated a "flagrant disparity in bargaining power," "lack of meaningful alternatives available" to the applicant, and "the omission of critical terms and conditions in the arbitration document." *Id.* at 922-23. In addition, the employer's mere promise to consider the applicant's application was inadequate consideration for the applicant's promise to submit to arbitration, thereby supporting an additional reason to invalidate the arbitration provision. *Id.* at 923-24.

In this instance, AGLA concedes that the Agreement is an adhesion contract and that the parties stood in unequal bargaining positions. As such, the critical issue is whether Wood has sufficiently identified unfair terms in the Agreement itself so as to establish its unconscionability. This, he has failed to do.

Wood primarily contends that the Agreement's arbitration provision unconscionably abrogates his state constitutional rights to state judicial forums and trial by jury by compelling arbitration of his state-law claims. At face value, Wood's argument expresses precisely the sort of general antipathy to arbitration already considered and rejected by the Supreme Court and this Circuit. *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (stating that the FAA reflects a "'national policy favoring arbitration and withdr[awing] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration'") (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 11-12 (1984)); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) ("Arbitration is not inherently unconscionable . . . .") (internal citations omitted). The contractual relinquishment of a state-created right to a state judicial forum, in and of itself, does not also extinguish the substantive rights

or remedies flowing from a particular statute. *Gilmore*, 500 U.S. at 26 ("'By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'")(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Nor can any state-law principles derived from West Virginia law be used to invalidate the Agreement based solely on the fact that it contains an arbitration provision. The Supreme Court has made clear that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry*, 482 U.S. at 492 n.9 (stating further that "[a]n agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law . . .*") (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24); *see* 9 U.S.C. § 2. In reading Section 2 of the FAA, the Court declared that "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2." *Id.* The preemptive force of the FAA, as combined with the Supremacy Clause, therefore operates to cabin state-created rights that frustrate arbitration. *See id.* at 490-91 (holding that the FAA preempted statutory provision of California Labor Law which allowed wage collection actions regardless of private arbitration agreements).

West Virginia precedent generally barring state claims from arbitration must be necessarily circumscribed in light of *Perry*, *Gilmer* and *Circuit City*. In *Dunlap*, the Supreme Court of Appeals of West Virginia declared that "constitutional rights—of open access to the courts to seek justice, and to trial by jury—are fundamental in the State of West Virginia." *Dunlap*, 567 S.E.2d at 276. However, the court explicitly declined to reach the issue of whether this right could "permissibly factor into judicial scrutiny of the conscionability of a provision in a contract of adhesion purporting to waive that entitlement" because of the "complex issues of federalism" implicated. *Id.* at 277. To the extent that *Dunlap* intends to fashion a broad prohibition against the arbitrability of state-law claims, such a ruling, whether dicta or otherwise, cannot contravene the FAA. Similarly, while Wood relies on *Copley v. NCR Corp.*, 394 S.E.2d 751, 756 (W. Va. 1990), to assert that West Virginia law forbids arbitration of

human rights claims, this Circuit has already held that *Copley*'s "ruling on arbitration cannot trump *Gilmer* and *Circuit City v. Adams*." *Adkins*, 303 F.3d at 506.[4]

Beyond cursory arguments resting wholly on a general hostility toward arbitration, Wood has failed to advance any state-law ground on which the Agreement could be invalidated.[5] Wood has not demon-

---

[4]In *Copley*, the Supreme Court of Appeals of West Virginia refused to compel arbitration of the plaintiff's state-law claims based on age and sex discrimination even though he had signed an employment contract contemplating arbitration. *Copley*, 394 S.E.2d at 752. The court held that Section 1 of the FAA exempted the employment contract from mandatory enforcement of the arbitration provision by expanding the statutory exception provided for "contracts of employment" to collective bargaining agreements. *Id.* at 754-55. As the district court below noted, the Supreme Court overruled this holding in *Copley*, explicitly confining the exception to apply to transportation workers. *Circuit City*, 532 U.S. at 109.

*Copley* also discussed "several subsidiary questions arising under state law," including whether an arbitration agreement could defeat a civil rights claim. *Copley*, 394 S.E.2d at 755. The court concluded that "under West Virginia law, an arbitration clause in an employment contract cannot defeat a human rights action filed by the claimant pursuant to W. Va. Code, 5-11-13(b)." *Id.* at 756.

[5]Wood appears to assert, rather opaquely, that the Agreement was illusory because AGLA could amend the terms or discontinue the Program at its discretion. However, AGLA's promise to be bound to arbitration is *a fortiori* adequate consideration because "'no consideration [is required] above and beyond the agreement to be bound by the arbitration process' for any claims brought by the employee." *Adkins*, 303 F.3d at 501 (quoting *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998)); *see also Hill*, 412 F.3d at 544 (applying Maryland law and finding that agreement which unambiguously required both employer and employee to arbitrate employment-related claims was supported by sufficient consideration, even though the policy itself enabled the employer to amend the program at its complete discretion); *cf. Saylor*, 613 S.E.2d at 923-24 (employer's mere promise to review a candidate's application for employment was insufficient consideration for employee's promise to arbitrate his claims, where the employer did not promise to submit its employment-related claims to arbitration). Moreover, AGLA's discretion

strated that arbitration would "prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies" afforded under the Human Rights Act or Wage Collection and Payment Act. *See Dunlap*, 567 S.E.2d at 275-76; *Gilmer*, 500 U.S. at 26-27 (holding that arbitration was not inconsistent with the purpose, legislative history, or structure of the ADEA). Neither can the Agreement be construed as waiving his substantive rights under either of those statutory provisions simply because they will be arbitrated. *Adkins*, 303 F.3d at 502 ("Certainly no agreement to arbitrate can be construed on its face as an inherent waiver of a litigant's statutory rights.").[6]

Significantly, Wood has not claimed that the Program's arbitration procedure employs biased or flawed rules or imposes such excessive fees as to create a "sham" dispute resolution forum. *Cf. Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (invalidating arbitration agreement which required employee to unilaterally disclose claims and lists of witnesses and allowed employer to choose arbitration panel and exercise unbridled discretion in changing rules); *Adkins*, 303 F.3d at 502 (acknowledging that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum") (internal citations omitted). In addition, we perceive no unconscionable defects in

---

is limited to prospective disputes and by specific notice requirements. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (promise to arbitrate was not illusory where employer's right to alter the material aspects of the agreement could only take effect "only after putting the change in writing, providing a copy to the employees, and allowing the employees to accept the change by continuing employment"); *Pierce v. Kellogg Brown & Root*, 245 F. Supp. 2d 1212, 1215-16 (E.D. Okla. 2003) (enforcing agreement to arbitrate where employer's unilateral right to amend the agreement was limited to prospective application and a ten-day notice provision).

[6]To the extent that Wood argues that any waiver of his constitutional right to access to state courts or trial by jury must be knowing and voluntary, we have already stated that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (internal quotations and citations omitted).

the Agreement itself with respect to omitted terms, surreptitiously added parties, or clearly biased terms weighed in favor of the employer. *Cf. Saylor*, 613 S.E.2d at 922. Accordingly, we affirm the district court's holding that Wood's state-law claims are arbitrable under a valid and enforceable agreement.

IV.

Wood further contends that Starkey is a necessary and indispensable party to this litigation, but that his joinder would destroy the diversity jurisdiction upon which this action is based.[7] To determine whether a party should be joined, Rule 19 of the Federal Rules of Civil Procedure sets forth a two-step inquiry, examining: (1) whether the party is "necessary" to the action under Rule 19(a); and (2) whether the party is "indispensable" under Rule 19(b). *National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). The burden of proof rests on the party raising the defense—here, Wood—to "show that the person who was not joined is needed for a just adjudication." 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1609 (3d ed. 2001).

We review a district court's denial of a motion for joinder pursuant to Rule 19(a) or (b) under the abuse of discretion standard and its findings of fact under the clear error standard. *National Union Fire Ins.*, 210 F.3d at 250. The district court found that Wood failed to proffer any explanation as to why he could not obtain complete relief against AGLA without the presence of Starkey under Rule 19(a)(1).[8]

---

[7]While Wood's treatment of this issue is admittedly terse, it cannot be said that he waived this issue by failing to set forth a detailed discussion in his brief. Although AGLA seeks to view Wood's claim as waived, AGLA surely had sufficient notice and did not suffer prejudice since it devoted nearly ten pages of analysis to this issue. *Canady v. Crestar Mortgage Corp.*, 109 F.3d 969, 974 (4th Cir. 1997) (holding that issue was not waived where appellant discussed issue in opening brief and appellee fully responded even though appellant failed to mention issue in notice of appeal). Accordingly, we shall entertain the Rule 19 issue raised by Wood.

[8]Rule 19(a) provides, in pertinent part:

Specifically, the district court noted that Starkey's potential liability under the Human Rights Act is separate and apart from that of AGLA. *See St. Peter v. Ampak-Division of Gatewood Prods.*, 484 S.E.2d 481, 489-90 (W. Va. 1997) (holding that an employee may maintain a separate cause of action under West Virginia's Human Rights Act against his supervisor).[9] The district court also found that

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

[9]Although the parties discuss this Circuit's prior decision in *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999), at length, *Owens-Illinois* is clearly distinguishable from the present appeal by its complicated facts. In *Owens-Illinois*, we reviewed a district court's decision to dismiss an action based on its determination that certain parties were necessary and indispensable parties that would destroy diversity jurisdiction under Rule 19. *Id.* at 438. Owens-Illinois, a manufacturing corporation, had entered into a settlement with plaintiffs who had been injured by asbestos exposure. *Id.* However, Owens-Illinois subsequently breached the agreement, such that certain plaintiffs filed tort actions against the manufacturer in West Virginia state court. *Id.* Owens-Illinois then preemptively filed a petition to compel arbitration in federal district court in the Southern District Court of West Virginia only against plaintiffs who resided in West Virginia, thereby excluding all plaintiffs residing in Ohio. *Id.* at 438-39.

This Circuit affirmed the district court's decision to dismiss the action, reasoning that "permitting this suit to continue in both the state and federal courts would likely subject all of the parties to conflicting legal obligations in a manner prohibited by Rule 19(a)(2)(ii)." *Id.* at 441. More specifically, the opinion stated that "[i]f this action was allowed to pro-

Starkey had not claimed an interest in the federal action, and therefore, joinder was not required under Rule 19(a)(2). Because we perceive no error in either of the district court's findings, we affirm the district court's conclusion that Starkey is not a "necessary" party.

V.

In sum, we conclude that the district court correctly applied West Virginia law and the FAA in holding that Wood's state-law claims are arbitrable pursuant to a valid and enforceable arbitration agreement. Furthermore, the district court did not abuse its discretion in determining that Starkey was not a necessary or indispensable party to this action. The district court's judgment is therefore affirmed in its entirety.

*AFFIRMED*

---

ceed one court might compel arbitration on the basis of the Agreement, while the other found that, because Owens-Illinois breached the Agreement, alternative judicial remedies were available to some of the Plaintiffs." *Id.*

In this instance, Wood failed to identify any conflicting obligations that could arise from the Agreement should Starkey remain an absent party to this litigation.