484 S.E.2d 481

**Terry Lee ST. PETER, Plaintiff Below, Appellant**

v.

**AMPAK–DIVISION OF GATEWOOD PRODUCTS, INC. and E.R. Gateman, Defendants Below, Appellees.**

No. 23678.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1997.

Decided Feb. 21, 1997.

Walt Auvil, Pyles & Auvil, Robert K. Tebay, III, Lantz & Tebay, Parkersburg, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Sandra K. Henson, Assistant Attorney General, Civil Rights Division, Charleston, WV, for Amicus Curiae, The West Virginia Human Rights Commission.

Fred F. Holroyd, Scott Evans, Holroyd & Yost, Charleston, WV, for Appellees.

PER CURIAM:

Terry St. Peter appeals a summary judgment order of the Circuit Court of Wood County dismissing his complaint against his former employer, AMPAK–Division of Gatewood Products, Inc. ("AMPAK"), and E.R. Gateman, the principal stockholder of Gatewood Products, Inc. ("Gatewood"). On appeal, Mr. St. Peter maintains that the circuit court erred in finding: first, that, as a matter of law, Mr. St. Peter's discharge was unrelated to his workers' compensation claim; second, that discrimination based on the perception of handicap was not prohibited; and, third, that Mr. Gateman could not be sued as an individual. Because we find that the circuit court erred in these matters, we reverse the circuit court and remand this case for further proceedings.

## I.

### Facts and Background

On January 12, 1993 Mr. St. Peter fell while working at AMPAK and fractured his right shoulder. When Mr. St. Peter returned to work on January 25, 1993, he told Mr. Gateman that he would be working a limited schedule for several months because his shoulder would need physical therapy. Mr. Gateman allegedly responded by saying he would have to "think about it because I [Mr. Gateman] don't have room for half a man in my organization." On January 26,

1993 Mr. St. Peter was informed that at a meeting on January 25, 1993 Gatewood's Board of Directors had approved of his discharge. On January 27, 1993 Mr. St. Peter filed a claim for workers' compensation benefits. According to Mr. St. Peter, the delay in filing his workers' compensation claim was because AMPAK, which usually filed forms for injured workers, failed to file when Mr. St. Peter was absent from work. The filing of workers' compensation forms was one of the duties Mr. St. Peter performed for AMPAK. Five days later, on February 1, 1993, Mr. St. Peter was told it was his last day of work.

Mr. St. Peter filed suit against AMPAK and Mr. Gateman alleging the following: (1) his discharge violated *W.Va.Code*, 23–5A–1 [1978] and 23–5A–3 [1990], of the Workers' Compensation Act, which prohibits discrimination for filing a workers' compensation claim; and (2) his discharge violated *W.Va. Code*, 5–11–1 [1967] *et seq.*, of the West Virginia Human Rights Act, which ·prohibits discrimination based on a handicap or on the perception of a handicap. On June 19, 1995, the circuit court granted partial summary judgment by dismissing Mr. Gateman as a party to the action.

AMPAK, by motion for summary judgment filed on October 23, 1995, sought dismissal of all remaining causes. After a hearing, the circuit court, by order entered on January 12, 1996, dismissed the remaining claims finding: (1) the workers' compensation prohibition did not apply because Mr. St. Peter "was not 'off work' " when he was discharged; (2) the handicap discrimination prohibition did not apply because a broken shoulder "was not an injury that 'substantially' limited the Plaintiff and such injury did not affect the Plaintiff over a 'substantial' period;" and (3) that there was no prohibition against discrimination based on the mere perception of handicap.

Mr. St. Peter appeals to this Court alleging that the circuit court erred in finding that the workers' compensation prohibition did not apply, in finding there was no cause of action based on the perception of handicap and in dismissing Mr. Gateman.

II.

*Discussion*

A.

*Standard of Review*

 "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Our traditional principle for granting summary judgment is stated in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syllabus Point 1, *Williams v. Precision Coil*, 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 2, *Painter v. Peavy, supra;* Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992). Syllabus Point 2 of *Williams* states:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*See* Rule 56 [1978] of the *West Virginia Rules of Civil Procedure; Williams, supra* and *Painter, supra* for discussions of the principals for granting summary judgment.

In *Williams,* we noted that " '[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]' " *Williams,* 194 W.Va. at 59, 459 S.E.2d at 336, *quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986).

With this standard in mind, we review the circuit court's grant of summary judgment, beginning with the holding that Mr. St. Peter's discharge did not violate our Workers' Compensation Law.

## B.

### *Workers' Compensation*

■ Our Workers' Compensation Act in *W.Va.Code*, 23–5A–3 [1990] prohibits the termination of an injured employee and finds the failure "to reinstate an employee who has sustained a compensable injury to the employee's former position upon demand" is a discriminatory practice.[1] In *Powell v. Wyoming Cablevision*, 184 W.Va. 700, 403 S.E.2d 717 (1991), we used the proof schemes of our discrimination cases under the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1 [1967] *et seq.*, to determine when discrimination had occurred under *W.Va.Code*, 23–5A–3 [1990]. Syllabus Point 1 of *Powell* states:

> In order to make a prima facie case of discrimination under W.Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

■ In this case, AMPAK alleges that Mr. St. Peter's fails to establish a *prima facie* case because "it is undisputed that the process for terminating the petitioner (Mr. St.Peter) was already underway before the petitioner even filed a Workers' Compensation claim." AMPAK maintains that there is no nexus between Mr. St. Peter's workers' compensation claim and his discharge.

AMPAK's quirk of timing argument was discussed and rejected in *Powell*. In *Powell*, we noted that "employers who practice retal-

iation may be expected to seek to avoid detection, and it is hardly to be supposed that they will not try to accomplish their aims by subtle rather than obvious methods...." *Powell*, 184 W.Va. at 704, 403 S.E.2d at 721, *quoting, Axel v. Duffy–Mott Co.*, 47 N.Y.2d 1, 6, 416 N.Y.S.2d 554, 556, 389 N.E.2d 1075, 1077 (1979). Because of the lack of direct evidence *Powell* instructs courts to look to a variety of factors including: (1) "[p]roximity in time of the claim and the firing;" (2) "[e]vidence of satisfactory work performance and supervisory evaluation before the accident;" (3) "actual pattern of harassing conduct for submitting the claim;" and (4) "adverse comments" after filing of the workers' compensation claim. *Powell*, 184 W.Va. at 704, 403 S.E.2d at 721 (citations omitted). *Powell* also rejected the exact argument espoused by AMPAK, namely dismissing a discrimination claim because the discharge occurred before the workers' compensation claim was filed.

We recognize, as have other courts, that a compensation claim need not actually be filed so long as the employee suffered a work-related injury and was attempting to file a claim. Thus, an employer can still violate the statute by firing the employee before his claim is filed. *See Cerracchio v. Alden Leeds, Inc.*, 223 N.J.Super. 435, 538 A.2d 1292 (1988); *Thompson v. Kinro, Inc.*, 37 Ohio App.3d 175, 525 N.E.2d 528 (1987); *Buckner v. General Motors Corp.*, *supra* [760 P.2d 803 (Okla.1988) ].

*Powell*, 184 W.Va. at 704 n. 9, 403 S.E.2d at 721 n. 9.

In the present case, we find that the circuit court erred in granting summary judgment simply because the decision to discharge Mr.

---

1. Subsections a and b of *W.Va.Code*, 23–5A–3 [1990] provide, in pertinent part:

 (a) It shall be a discriminatory practice within the meaning of section one [§ 23–5A–1] of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four [§ 23–4–1 et seq.] of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense. A separate dischargeable offense shall mean misconduct by the injured employee wholly unrelated to the injury or the absence

 from work resulting from the injury. A separate dischargeable offense shall not include absence resulting from the injury or from the inclusion or aggregation of absence due to the injury with any other absence from work.

 (b) It shall be a discriminatory practice within the meaning of section one of this article for an employer to fail to reinstate an employee who has sustained a compensable injury to the employee's former position of employment upon demand for such reinstatement provided that the position is available and the employee is not disabled from performing the duties of such position....

St. Peter occurred before Mr. St. Peter filed his workers' compensation claim. Based on the evidence, we find under Syllabus Point 1 of *Powell* that Mr. St. Peter has established a *prima facie* case of discrimination under *W.Va.Code,* 23–5A–3 [1990] because: (1) he sustained an on-the-job injury; (2) he instituted proceedings under the Workers' Compensation Act; and (3) he established a nexus between the filing of his workers' compensation claim and his discharge. Mr. St. Peter's evidence of the nexus includes the proximity in time between his claim and his discharge, his earlier satisfactory work performance and the employer's post-accident comments. We find this is sufficient evidence to shift the burden "to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge." Syllabus Point 2, in part, *Powell.*

### C.

#### West Virginia Human Rights Act

Mr. St. Peter maintains that the circuit court erred in dismissing his claims under the West Virginia Human Rights Act, *W.Va. Code,* 5–11–1 [1967] *et seq.* because a "perceived handicap" is a "handicap" under *W.Va.Code,* 5–11–3(m) [1994]. AMPAK argues that under *Ranger Fuel Corp. v. W. Va. Human Rights Comm'n,* 180 W.Va. 260, 376 S.E.2d 154 (1988), the definition of handicap must be "strictly construed" and Mr. St. Peter did not suffer an injury of the severity to be characterized as a handicap. However, Mr. St. Peter appeals the circuit court's holding that discrimination based on the perception of a handicap is not prohibited. Mr. St. Peter emphasizes that on the first day he returned to work after his compensable injury, Mr. Gateman told him that "half a man" was not needed in his organization.

The term "handicap" is defined in *W.Va. Code* 5–11–3(m) [1994], which states:

The term "handicap" means a person who:

(1) Has a mental or physical impairment which substantially limits one or more of such person's major life activities; the term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working;

(2) Has a record of such impairment; or

(3) *Is regarded as having such an impairment.*

For the purposes of this article, this term does not include persons whose current use of or addiction to alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others. (emphasis added).

We note that the Legislature amended the definition of handicap in 1989 to include one who "[i]s regarded as having such an impairment." However, several cases arose under the 1987 version of *W.Va.Code,* 5–11–3, which did not include within the definition of handicap the perception of a handicap. *See Chico Dairy Co. v. W.Va. Human Rights Comm'n,* 181 W.Va. 238, 382 S.E.2d 75 (1989) *opinion as modified on denial of rehearing; Ranger Fuel, supra; Fourco Glass Co. v. W.Va. Human Rights Comm'n,* 181 W.Va. 432, 383 S.E.2d 64 (1989) *(per curiam ).* In *Chico Dairy,* 181 W.Va. at 248 n. 10, 382 S.E.2d at 85 n. 10, we noted the 1989 amendment to the statutory definition of handicap and said that "[a]n amendment is meant to change the law. (citations omitted)."

Because the present case concerns acts that occurred in 1993, the 1989 amendment was in effect, and therefore, discrimination based the perception of a handicap was prohibited. Based on the clear and unambiguous language of *W.Va.Code* 5–11–3(m) [1994], we find that the circuit court erred in dismissing Mr. St. Peter's perception of handicap discrimination claim.

### D.

#### Individual Liability

By partial summary judgment order entered on June 19, 1995, the circuit court dismissed Mr. Gateman. The dismissal order simply stated "[t]hat the Defendant, E.R. Gateman, be and he is hereby *DISMISSED* as a party to this action.... (emphasis in original)." No other information was provid-

ed. Subsequently, when Mr. St. Peter filed his amended complaint, the circuit court found that Mr. Gateman's dismissal controlled. On appeal, Mr. St. Peter maintains that Mr. Gateman should not have been dismissed because: (1) piercing the corporate veil is primarily a factual question, which generally precludes summary judgment; and (2) *W.Va.Code*, 5–11–9 [1992] establishes a cause of action against individuals who participate in unlawful discrimination.

In addition to maintaining that Mr. Gateman was properly dismissed, AMPAK maintains that Mr. St. Peter's appeal of this issue is untimely because Mr. Gateman was dismissed by summary judgment order, entered on June 19, 1995 and his petition for appeal was not filed until May 22, 1996. AMPAK alleges that Mr. St. Peter's appeal was not filed within the four-month appeal period of Rule 3 [1995] of the *West Virginia Rules of Appellate Procedure*.[2]

### 1.

### *Timeliness of Appeal*

■ Before discussing the merits of the circuit court's dismissal of Mr. Gateman as a defendant, we begin by considering whether Mr. St. Peter's appeal of this issue was untimely. Mr. Gateman, one of the two defendants below, was dismissed by partial summary judgment order entered on June 19, 1995. The final summary judgment order was entered on January 12, 1996.

Not all summary judgment orders commence the running of the appeal time. When multiple parties are involved in an action and summary judgment is granted as to some but not to all the parties, Rule 54 [1978] of the *West Virginia Rules of Civil Procedure* generally governs when the order is final and whether the appeal time begins to run. Rule 54 [1978] states:

(b) *Judgment Upon Multiple Claims or Involving Multiple Parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In Syllabus, *Wilcher v. Riverton Coal Co.*, 156 W.Va. 501, 194 S.E.2d 660 (1973), we held that a partial summary judgment order is not final and appealable unless there is "express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Rule 54. The Syllabus of *Wilcher* states:

Where multiple claims are involved the trial court should not attempt to enter a final judgment until all the claims have been fully adjudicated, and a summary judgment for a defendant under Rule 56(d), R.C.P. on less than all of the plaintiff's claims is not a final judgment and not appealable under Rule 54(b), R.C.P. unless there is an "express determination that there is no just reason for delay and upon an express direction for the entry of judgment". [sic]

---

2. Rule 3 [1995] of *W.Va.R.A.P.*, states in pertinent part:

(a) *Time for Petition.*—No petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than four months before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered, whether the State be a party thereto or not; provided, that the judge of the circuit court may for good cause shown, by order entered of record prior to the expiration of such period of four months, extend and re-extend such period, not to exceed a total extension of two months, if a request for the transcript was made by the party seeking an appeal or supersedeas within thirty days of the entry of such judgment, decree or order. In appeals from administrative agencies, the petition for appeal shall be filed within the applicable time provided by the statute.

In *Durm v. Heck's, Inc.,* 184 W.Va. 562, 401 S.E.2d 908 (1991), we held that notwithstanding Rule 54's "express determination" requirement, a party *could* appeal a partial summary judgment order disposing of less than the entire case if the circuit court's rule approximated a final order in its nature and effect. Syllabus Point 2 of *Durm* states:

> Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] . . . entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

Although *Durm* allows an aggrieved party the possibility of an immediate appeal of a partial summary judgment order that "approximates a final order in its nature and effect," *Durm* does not require that the aggrieved party immediately appeal. A similar situation arose in *Eblin v. Coldwell Banker Residential Affiliates, Inc.* 193 W.Va. 215, 222, 455 S.E.2d 774, 781 (1995) (*per curiam*), leading us to conclude:

> [E]ntry of a *Durm*-type order, while allowing an aggrieved party to take an immediate appeal, does not require that such an appeal be taken at that time, and an aggrieved party may take an appeal at any time until the final appeal time in the case expires.

*See Riffe v. Armstrong,* 197 W.Va. 626, 477 S.E.2d 535 (1996) (immediate appeal is not required of a *Durm*-type order).

In the present case, the June 19, 1995 order dismissing Mr. Gateman did not require an immediate appeal because the order did not contained the "express determination" language of Rule 54 and even if that order "approximates a final order in its nature and effect" (Syllabus Point 2, in part, *Durm*), *Durm* does not require an immediate appeal. Based on the above, we find that Mr. St. Peter's appeal of the dismissal of Mr. Gateman was timely filed.

### 2.
### *Summary Judgment*

■ Having determined the timeliness issue, we now consider whether summary judgment was appropriate. Mr. St. Peter in his attempt to hold Mr. Gateman personally liable, maintains that AMPAK and Mr. Gateman should not be considered separate entities because there is unity of interest and ownership, and an inequitable result would occur if the corporation alone was held liable. The summary judgment order dismissing Mr. Gateman is brief and contains no findings of fact or conclusions of law. The record before this Court contains no information on this issue; even the memorandums in support of or in opposition to the motion for summary judgment are not supplied.

In our leading case on "piercing the corporate veil," *Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 347–48, 352 S.E.2d 93, 98–99 (1986) (a breach of contract case), we listed nineteen factors to be considered in deciding whether to pierce the corporate veil and noted that this list was not complete. *See* Syllabus Point 3, *Laya* discussing two-prong test for discarding corporate facade. In *Southern Electrical Supply Co. v. Raleigh County National Bank,* 173 W.Va. 780, 788, 320 S.E.2d 515, 523 (1984) (a tort case), we said:

> [D]ecisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details.

> Decisions to "pierce" involve multifarious considerations, including inadequacy of capital structures, whether personal and corporate funds have been commingled without regard to corporate form by a sole shareholder, whether two corporations have commingled their funds so that their accounts are interchangeable; whether they have failed to follow corporate formalities, siphoning funds from one corporation to another without regard to harm caused either entity, or failed to keep separate records. Other reasons to disregard the structure are: *total* control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of

interest and ownership that causes one party or entity to be indistinguishable from another; common shareholders, common officers and employees, and common facilities. (emphasis in original) (footnote omitted).

■ The numerous questions of fact present in determining when to pierce the corporate veil, led us to caution against deciding this issue on summary judgment. Syllabus Point 6 of *Laya, supra* states:

The propriety of piercing the corporate veil should rarely be determined upon a motion for summary judgment. Instead, the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence.

*See Dieter Engineering Services, Inc. v. Parkland Development, Inc.,* 199 W.Va. 48, 483 S.E.2d 48 (1996) for a recent discussion of when the corporate facade should be disregarded.

In the present case, we find no justification to disregard our general rule against deciding whether to pierce the corporate veil upon a motion for summary judgment. The record contains no evidence and the circuit court's order is silent on all the factual issues. Without any evidence, we cannot conclude that summary judgment on this issue of piercing the corporate veil with its numerous factual questions was proper. We emphasize that "[s]ummary judgment procedure should not be utilized in a factually complex case...." *Laya, supra,* 177 W.Va. at 352, 352 S.E.2d at 102.

■ Our final issue is whether Mr. Gateman can be held liable for discriminating against a person because such a person is regarded as having a handicap. The West Virginia Human Rights Act makes it unlawful for "any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required...." *W.Va.Code,* 5–11–9(1) [1992]. The Human Rights Act also *establishes a cause of action against individual person* who participates in unlawful discrimination.

*W.Va.Code,* 5–11–9 [1992] provides in pertinent part:

It shall be an unlawful discriminatory practice, ...
(7) For any *person,* employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:
(A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practice defined in this section.... (emphasis added).

■ In *Holstein v. Norandex Inc.,* 194 W.Va. 727, 730–31, 461 S.E.2d 473, 476–477 (1995), we held that given (1) the Human Rights Act's "explicit definition of 'person,'" (2) the "very spirit and propose of" the Act and (3) the Act's required liberal construction (*W.Va.Code,* 5–11–5 [1994]), an individual person, including another employee, can be held liable under the Act. Syllabus Point 3 of *Holstein* states:

The term "person," as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation.

In Syllabus Point 9 of *Conrad v. ARA Szabo,* 198 W.Va. 362, 480 S.E.2d 801 (1996), we stated:

The term "person," as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers.

In this case, we find that a cause of action may be maintained by Mr. St. Peter against Mr. Gateman, as a person, under the West Virginia Human Rights Act. Similar to our holding in *Holstein,* 194 W.Va. at 732, 461 S.E.2d at 478, we find that "the cause of

action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices."

For the above stated reasons, we reverse the decision of the Circuit Court of Wood County and this case is remanding for further proceedings consistent with is opinion.

Reversed and remanded.