IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-345

_____

FILED

June 11, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

MEGAN MCKNIGHT and LUKE MCKNIGHT,
Plaintiffs Below, Petitioners,

v.

BOARD OF GOVERNORS OF GLENVILLE STATE UNIVERSITY,
GARY Z. MORRIS, and JASON P. BARR,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Gilmer County
Honorable Richard A. Facemire, Judge
Civil Action No. CC-11-2022-C-17

REVERSED AND REMANDED
_____

Submitted: May 21, 2024
Filed: June 11, 2024

Michael D. Crim, Esq.
Crim Law Office, PLLC
Clarksburg, West Virginia
Counsel for Petitioner

Allison B. Williams, Esq.
Amy M. Smith, Esq.
Kaitlin L.H. Robidoux, Esq.
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Counsel for Respondents

JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Petitioners Megan McKnight ("Dr. McKnight") and Luke McKnight ("Mr. McKnight") (collectively "Petitioners") appeal the July 6, 2023, order of the Gilmer County Circuit Court, which granted Respondents Board of Governors of Glenville State University ("GSU"), Gary Z. Morris ("Morris"), and Jason P. Barr's ("Barr") (collectively "Respondents") Motion to Dismiss.[1] On appeal, Dr. McKnight argues that the circuit court erred in evaluating her claims under a heightened pleading standard. Further, Dr. McKnight contends the circuit court erred in concluding that she had failed to allege facts sufficient to constitute a constructive discharge claim, sex/gender discrimination claim, discrimination claim against Morris and Barr, and hostile work environment claim. Lastly, Mr. McKnight argues his loss of consortium claim should be remanded along with Dr. McKnight's substantive claims. As discussed below, after review of the record and pleadings before this Court, we reverse the circuit court's July 6, 2023, order and remand the case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dr. McKnight received her Bluegrass Music Certificate in 2007 and her B.A. in Elementary/Early Education in 2011, both from Glenville State University. During the 2006-2007 school year, Dr. McKnight began working for GSU under the supervision of Buddy Griffin in the school's Bluegrass Program, a position she maintained through the

---

[1] Glenville State University was dismissed by separate order not pending before this Court on appeal.

1

2009-2010 school year. On June 7, 2010, Dr. McKnight was employed to serve as the part-time Bluegrass Program Assistant. Dr. McKnight continued working for GSU in various positions until December 2021. GSU employed Dr. McKnight for the 2011-2012 school year in the position of Artist in Residence and Director of Bluegrass Programs. Dr. McKnight was employed by GSU for the 2012-2013 school year as the Director of Bluegrass Programs. Dr. McKnight received her Master of Education degree from Marshall University in May 2013, and her Doctor of Education degree from Walden University in April 2018.

After receiving her Master of Education degree, Dr. McKnight was employed by GSU for the 2013-2014, 2014-2015 and 2015-2016 school years in the position of Visiting Assistant Professor of Music and Director of Bluegrass Programs. During the 2016-2017, 2017-2018, 2018-2019 and 2019-2020 school years, Dr. McKnight was employed by GSU as an Assistant Professor of Music and Director of Bluegrass Programs. Dr. McKnight helped create the Pioneer Stage Bluegrass Music Education Center and developed and oversaw the implementation of GSU's online Bachelor of Arts in Music program. Dr. McKnight's complaint alleges that, in or around the 2016-2017 school year, GSU promised that she would be offered an expedited promotion and tenure upon completion of her Doctor of Education degree based on her length of employment, her commitment to GSU, and her extra efforts and service to the university and community.

2

Dr. McKnight reportedly was not offered expedited promotion and tenure after receiving her Doctorate degree.[2]

During the 2017-2018 school year, Morris became the interim Vice-President of Academic Affairs for GSU. Morris became GSU's Provost and Vice-President of Academic Affairs on February 4, 2020. Morris selected and appointed Barr to be GSU's Chair of the Fine Arts Department on or about June 22, 2019. Prior to Morris becoming Provost and Vice-President of Academic Affairs, Dr. McKnight had consistently received positive evaluations from GSU.

Petitioners filed their complaint in this matter on December 16, 2022. In their complaint, Dr. McKnight and Mr. McKnight asserted the following counts: 1) discrimination based on sex/gender; 2) discrimination by Morris and Barr, 3) gender based hostile work environment; and 4) loss of consortium.

---

[2] On August 27, 2021, Dr. McKnight entered into a revised contract for the 2021-2022 school year that promoted her to Associate Professor of Appalachian Studies and granted her tenure. While the complaint does not reference this revised contract, it was considered by the circuit court for purposes of analyzing the motion to dismiss. At oral argument, counsel for petitioners conceded that such consideration was not improper under the circumstances of this case. While the complaint does not allege that Dr. McKnight eventually received a promotion and tenure, we find the same to be true based upon the record. However, we note that the parties dispute whether the promotion and tenure were granted on an expedited basis.

In her complaint, Dr. McKnight alleged that GSU, Morris, and Barr subjected her to the following adverse employment actions: constructive discharge; denial of opportunity to seek tenure on an expedited basis following receipt of doctorate; denial of the opportunity to serve on committees; denial of the opportunity to have a full slate of student advisees; denial of the opportunity to provide instruction to students in GSU's Bluegrass Program which she was hand-selected to lead; denial of the opportunity to teach core classes in Appalachian Studies; denial of the opportunity to teach a Recording and Engineering course that she had taught for the previous ten years which was given to a male instructor; denial of the opportunity to run the Pioneer Stage Bluegrass Music and Education Center which she had established; denial of the stipend she was to receive for running the Pioneer Stage which GSU had agreed to provide through 2023; denial of the opportunity to teach a full course load as required by GSU; compensation at a rate less than similarly situated male employees; and, that GSU, on more than one occasion, improperly withheld from Dr. McKnight the compensation to which she was entitled.

Additionally, Dr. McKnight alleged that the adverse decisions were made based on her gender. Specifically, Dr. McKnight's complaint alleges: while denying Dr. McKnight the opportunity to advise students in the Appalachian Studies program, GSU and Morris hired a new male instructor to teach the Appalachian Studies courses and advise students in the Appalachian Studies program; while denying Dr. McKnight a full course load to teach, GSU and Morris hired a new male instructor to teach history courses that she was qualified to teach; while denying Dr. McKnight the opportunity to teach a full course

4

load, GSU assigned a male instructor to teach the Recording and Engineering course that she had taught for the previous ten (10) years; after Barr became Chair of the Fine Arts Department, Dr. McKnight attended a meeting in which Barr was discussing the promotion of a female colleague and made a comment suggesting that the female colleague must have been sleeping with someone to get the promotion; Morris attended an emergency meeting of the Board of Governors and in referring to Dr. McKnight, commented that "this girl" should not be on the faculty, she should only be staff; Morris actively lobbied the promotion and tenure committee to deny Dr. McKnight's promotion and tenure; and Morris misrepresented to GSU's President that Dr. McKnight did not have the academic credentials to teach either Music or Appalachian Studies, even though she was currently serving as an Assistant Professor of Music and had served in that capacity since 2013. Furthermore, the complaint makes the general allegation that all the actions and conduct of the Respondents would not have occurred but for Dr. McKnight's gender.

On February 13, 2023, GSU, Morris, and Barr filed their motion to dismiss and memorandum of law in support of their motion to dismiss. The motion to dismiss was heard on May 22, 2023. The circuit court entered an order granting the motion to dismiss and dismissed the case in its entirety on July 5, 2023. It is from this order that Dr. McKnight and Mr. McKnight appeal.

## II.    STANDARD OF REVIEW

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex. rel McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). The West Virginia Supreme Court instructs that "motions to dismiss are viewed with disfavor," and it has "counsel[ed] lower courts to rarely grant such motions." *Forshey v. Jackson,* 222 W. Va. 743, 749, 671 S.E.2d 748, 754 (2008). Moreover, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977). On appeal of a dismissal based on granting a motion pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6), the allegations of the complaint must be taken as true. Syl. Pt. 1, *Wiggins v. Eastern Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987).

## III.    DISCUSSION

On appeal, the Petitioners argue six assignments of error as to the underlying final order granting the motion to dismiss which we will address in turn. First, Petitioners assert that the circuit court erred in evaluating Dr. McKnight's substantive claims on a heightened pleading standard.

It is unclear what standard the circuit court actually utilized in evaluating Petitioners' complaint in its July 6, 2023, order. The order contains discussion of a

6

heightened pleading standard when qualified immunity is at issue. However, the circuit court did not specify whether it viewed the complaint at issue here under a heightened pleading standard or under the notice pleading standard of Rule 8(a) of the *West Virginia Rules of Civil Procedure*. Regardless, the correct pleading standard for complaints alleging violations of the West Virginia Human Rights Act ("WVHRA") only requires the plaintiff to plead facts, taken as a whole, sufficient to show they are entitled to relief on any possible theory. *See Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 522, 854 S.E.2d 870, 884 (2020). "Moreover, a party is not required to establish a *prima facie* case at the pleading stage." *Id*. "Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard." *Id*. (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)).

In addressing the question of qualified immunity, the Supreme Court of Appeals of West Virginia ("SCAWV") has stated "a government entity has no qualified immunity where the plaintiff can demonstrate that the government entity's discretionary 'acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known[.]'" *Judy v. Eastern West Virginia Community and Technical College,* 246 W. Va. 483, 488, 874 S.E.2d 285, 290 (2022) (citing Syl. Pt. 3, in part, *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 657, 783 S.E.2d 75, 78 (2015)). In *Judy*, the respondent, Eastern West Virginia Community and Technical

7

College, contended that it was entitled to qualified immunity because, as a public college, it was a state agency or a political subdivision. In response, the SCAWV stated "[r]espondent cannot reasonably argue that the WVHRA […] does not constitute clearly established statutory law of which it should have known." *Id.* at 488, 874 S.E.2d at 290. Here, as with *Judy*, Petitioners "pled facts demonstrating a violation of this clearly established law [WVHRA], so, per *Marple*, [GSU] is entitled to no qualified immunity here." *Id*. Thus, whatever standard was used by the circuit court, it is clear that a heightened pleading standard does not apply to claims alleging violations of the WVHRA. *See Id*.

In her second assignment of error, Dr. McKnight alleges that the circuit court erred in concluding that she had failed to allege sufficient facts to constitute a constructive discharge.[3] A constructive discharge is sufficiently alleged when the employee claims that because of age, race, sexual, or other unlawful discrimination, the employer created a hostile working climate which was so intolerable that the employee was forced to leave his or her employment. Syl. Pt. 5, *Burns v. West Virginia Department of Education and Arts*, 242 W. Va. 392, 836 S.E.2d 43 (2019). In order to prove a constructive discharge, a plaintiff must establish that working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit. It is not necessary,

---

[3] We note that constructive discharge was not a specific count pled in petitioner's complaint. However, constructive discharge could conceivably be found to be an adverse employment decision in connection with Dr. McKnight's WVHRA discrimination claims.

8

however, that a plaintiff prove that the employer's actions were taken with a specific intent to cause the plaintiff to quit. See *Id.* at 394, 836 S.E.2d at 45.

As discussed above, the standard for assessing a motion to dismiss requires the circuit court to view the complaint in the light most favorable to the plaintiff and take all allegations as true. *See Wiggins,* 178 W. Va. at 63, 357 S.E.2d at 745. S*ee also Mountaineer Fire & Rescue Equip., LLC*, 244 W. Va. at 520, 854 S.E.2d at 882 (the task of a court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof).

Here, in assessing the legal feasibility of the complaint and viewing the allegations in a light most favorable to the Petitioners, we hold that the complaint makes sufficient allegations to survive a motion to dismiss. With respect to her working conditions, Dr. McKnight alleged she was not paid for any service she provided to the Pioneer Stage during the 2021-2022 school year despite GSU's agreement to provide the same through 2023; she was denied the opportunity to serve on committees; she was denied the opportunity to have a full slate of student advisees; she was denied the opportunity to provide instruction to students in GSU's Bluegrass Program which she was hand-selected to lead; she was denied the opportunity to teach core classes in Appalachian Studies; she was denied the opportunity to teach a Recording and Engineering course that she had taught for the previous ten years which was given to a male instructor; she was denied the opportunity to run the Pioneer Stage Bluegrass Music and Education Center which she had

9

established; she was denied the opportunity to teach a full course load as required by GSU; she was compensated at a rate less than similarly situated male employees; and, that GSU, on more than one occasion, improperly withheld from Dr. McKnight the compensation to which she was entitled. Further, Dr. McKnight alleged that after filing her grievance, Morris instructed one or more of Dr. McKnight's colleagues to have no contact with her. These allegations, along with the allegations in the complaint alleging gender-based hostile work environment and unlawful gender-based discrimination, taken as a whole, support Dr. McKnight's ability to prove some set of facts that would entitle her to relief. If Dr. McKnight was able to produce evidence supporting all the allegations contained in her complaint, a finder of fact could justifiably conclude that a reasonable person would be compelled to quit under such circumstances. Accordingly, Dr. McKnight alleged sufficient facts to survive a motion to dismiss the constructive discharge claim.

In Dr. McKnight's third assignment of error, she argues that the circuit court erred in finding she that she had failed to allege sufficient facts to constitute a gender discrimination claim. We agree.

The SCAWV has stated that allegations which would constitute a prima facie case of employment discrimination are sufficient to survive a motion to dismiss. *See Judy*, 246 W. Va. at 489, 874 S.E.2d at 291. Further,

> [i]n order to make a prima facie case of employment discrimination ... the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected

10

class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Id.* (citing Syl. Pt. 3, *Conaway v. E. Associated Coal Corp.,* 178 W. Va. 164, 358 S.E.2d 423 (1986)). "The 'but for' test of discriminatory motive in [*Conaway*], is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." *Id.* (citation omitted).

Dr. McKnight's complaint sufficiently alleges she is a member of a protected class. Paragraph ninety (90) of Petitioners' complaint alleged that the actions and conduct of the Respondents would not have occurred but for Dr. McKnight's gender.

Dr. McKnight also alleges that GSU made adverse decisions concerning her employment. Specifically, Dr. McKnight's complaint alleges that: 1) after completing her degree in Appalachian Studies, GSU denied her the opportunity to teach any core classes within the Appalachian Studies Program with the exception of Traditions of Appalachian Music; 2) GSU refused to continue to provide a contract or stipend to operate the Pioneer Stage Bluegrass Music Education Center for the 2021-2022 school year despite agreeing to provide such through 2023; and 3) she was constructively discharged due to the unlawful discrimination and related working conditions. While Respondents argue that mere changes to an employee's duties do not constitute an adverse action, allegations of constructive discharge and loss of the Pioneer Stage stipend satisfy the adverse decision element of an employment discrimination claim at the motion to dismiss stage.

11

Finally, Dr. McKnight's complaint satisfied the "but for" requirement. Dr. McKnight alleged that GSU hired a male instructor to teach and advise all Appalachian Studies courses. Dr. McKnight further contends that she was paid less than similarly situated males and was denied opportunities of employment as similarly situated males. Additionally, Dr. McKnight alleged that all the actions of the Respondents were due to her gender. While perhaps not a model of clarity, Dr. McKnight's complaint, taken as a whole, alleges facts sufficient to state a prima facie claim of unlawful gender discrimination.

In her fourth assignment of error, Dr. McKnight argues that the circuit court erred in determining she failed to allege facts sufficient to constitute a discrimination claim against Morris and Barr. Once again, we agree.

Dr. McKnight's complaint alleges that the actions of Morris and Barr violate West Virginia Code § 16B-17-9(7).[4] The WVHRA states that it shall be unlawful for any employer to

> [e]ngage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section.

---

[4] West Virginia Code § 5-11-1 et seq. was recodified into West Virginia Code § 16B-17-1 et seq. effective February 8, 2024.

*See* West Virginia Code § 16B-17-9(7)(A). The SCAWV has held that the language of the statue is clear and unambiguous. Based on this language it is an unlawful discrimination practice for any person to: 1) engage in any form of threat or reprisal; 2) engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss; or 3) aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section. *See Michael v. Appalachian Heating, LLC*, 226 W. Va. 394, 401, 701 S.E.2d 116, 123 (2010). Dr. McKnight's complaint makes clear allegations that Morris and Barr engaged in acts with the purpose to harass, degrade, embarrass, or aid and abet unlawful discriminatory practices.

Dr. McKnight's complaint specifically alleges that Morris actively lobbied the promotion and tenure committee to deny Dr. McKnight's tenure due to her gender. She alleges that both Morris and Barr prevented her from having a full slate of student advisees; that Morris hired male teachers to teach the courses she was qualified to teach; and after filing a grievance, Morris instructed colleagues of Dr. McKnight to have no contact with her. These allegations, in conjunction with the complaint taken as whole and the adverse employment decisions alleged by Dr. McKnight, are sufficient factual allegations to provide notice pleading to the defendants of the claim alleged against them. Additionally, this Court, as discussed above, has determined that Petitioners have pled sufficient facts to make a prima facie case of gender discrimination against GSU. Thus, the allegations

13

against Morris and Barr are sufficient to state a claim of aiding and abetting GSU's alleged gender discrimination.

Further, Dr. McKnight contends the circuit court erred in its finding that she only named Morris and Barr as defendants in their individual capacity, while all allegations concern their official capacities.

> The term "person," as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation.

*See* Syl. Pt. 5, *St. Peter v. Ampak-Division of Gatewood Products, Inc.*, 199 W. Va. 365, 484 S.E.2d 481 (1997). The Human Rights Act establishes a cause of action against an individual person who participates in unlawful discrimination. *Id.* at 373, 484 S.E.2d at 489. While the complaint may be unartfully crafted in this respect, it is clear that Dr. McKnight named Morris and Barr as individuals under the WVHRA. As stated in her complaint, Dr. McKnight's allegations regarding Morris and Barr are based on their individual actions taken as agents of GSU. The circuit court erred in dismissing the complaint against Morris and Barr on this basis.

In her fifth assignment of error, Dr. McKnight asserts the circuit court erred in concluding she failed to allege facts sufficient to constitute a hostile environment claim. We agree.

14

An employee may state a claim for hostile environment sexual harassment if unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature have the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment. *See* Syl. Pt. 3, *Roth v. DeFeliceCare, Inc.*, 226 W. Va. 214, 700 S.E.2d 183 (2010).

> To establish a claim for sexual harassment under the West Virginia Human Rights Act based upon a hostile or abusive work environment, a plaintiff-employee must prove that: (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer.

Syl. Pt. 6, *Constellium Rolled Products Ravenswood, LLC v. Griffith*, 235 W. Va. 538, 775 S.E.2d 90 (2015). Further, knowledge of work place misconduct may be imputed to an employer by circumstantial evidence if the conduct is shown to be sufficiently pervasive or repetitive so that a reasonable employer, intent on complying with the West Virginia Human Rights Act, would be aware of the conduct. *See* Syl. Pt. 5. *Conrad v. ARA Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996).

In the July 6, 2023, order, the circuit court dismissed Dr. McKnight's claim of gender based hostile work environment due to the lack of severity and pervasiveness of the alleged conduct. Dr. McKnight alleged two specific instances of workplace sexual harassment. First, she alleges that when she attended a meeting with Barr, he was

discussing the promotion of a female colleague and suggested that she must be sleeping with someone to get the promotion. Next, Dr. McKnight alleges that Morris, in a meeting with GSU, referred to Dr. McKnight as "this girl" when suggesting she should be staff, not faculty. The allegations further state that GSU was on notice and failed to stop or remedy the hostile work environment.

In *Conrad*, the circuit court also focused on the perceived lack of pervasiveness and severity of the alleged harassment and granted summary judgment for the defendant. *See Conrad* at 372, 480 S.E.2d at 811. The circuit court in *Conrad* looked at the alleged sexual harassment conduct separate and apart from the discriminatory actions of a non-sexual nature. *Id*. at 371, 480 S.E.2d at 810. On appeal, the SCAWV reversed the grant of summary judgment and stated, "[s]uch incidents […] cannot be viewed in isolation of the mistreatment that did not have an overt sexual component. Rather, the plaintiff's environment must be considered under all the circumstances, taken as a whole." *Id*. at 372, 480 S.E.2d at 811. Dr. McKnight alleges sexually discriminatory remarks directed at her and female employees; acts of Morris and Barr meant to embarrass, and aid unlawful discrimination against Dr. McKnight; and gender discrimination regarding compensation and job opportunities. "Whether sexual harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances." *Id.* at 373, 480 S.E.2d at 812. "Assuming evidence of a prima facie case of sexual harassment has been shown, we noted in [*Conrad*] that unless 'only one conclusion could be drawn from the record in the

16

case,' the case presents factual issues which require a jury to resolve." *Akers v. Cabell Huntington Hosp., Inc.*, 215 W. Va. 346, 352, 599 S.E.2d 769, 775 (2004). Taken as a whole, Dr. McKnight's allegations are sufficient to place defendants on notice of gender based hostile work environment for purposes of surviving a motion to dismiss.

Undeniably, the Petitioners must still develop sufficient facts to ultimately prevail on their claims, but it does not appear beyond doubt to this Court that the Petitioners can prove no set of facts in support of their claims which would entitle them to relief. Accordingly, we find the circuit court erred in its determination that Dr. McKnight's complaint failed to sufficiently plead her substantive claims.

Regarding the sixth assignment of error, Petitioners argue that Mr. McKnight's loss of consortium claim should be remanded with the substantive claims as it is derivative of the discrimination claims. Respondents argue that Mr. McKnight's loss of consortium claim was properly dismissed as it is derivative of the substantive claims which were dismissed below. As discussed above, this Court finds that Dr. McKnight sufficiently pled her substantive claims, meriting reversal of the circuit court's order. As dismissal of the substantive claims is hereby reversed, then it is appropriate that Mr. McKnight's derivative claim also be reversed and reinstated.

17

## IV.  CONCLUSION

For the foregoing reasons, this Court reverses the Circuit Court of Gilmer County's order dated July 6, 2023, in its entirety and remands the case for further proceedings consistent with this opinion.

Reversed and Remanded.